**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**William E. WILLIAMS et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 30, 1964.

Robert F. Matthews, Atty. Gen., Frankfort, Wm. A. Lamkin, Jr., Asst. Atty. Gen., Richard H. Peek, Paducah, Joseph B. Williams, Murray, for appellant.

Adrian H. Terrell, Paducah, for appellees.

DAVIS, Commissioner.

This condemnation action involves procurement by appellant of 9.52 acres from appellees' tract of 526 acres to provide right of way for a "local feeder road"; the "feeder road" will provide access from an area adjacent to Barkley Lake to U. S. Highway 62. The right of way is not for a limited access road.

The basic questions presented by appellant are whether the verdict is supported by sufficient evidence of probative value, whether the verdict is palpably excessive, and whether there was reversible error in admitting evidence of irrelevant damage factors.

The verdict and judgment award $11,920 to the appellees. The county court commissioners had fixed the total award at $1,750. The disparity of evaluations as viewed by appellant and appellees is illustrated by the fact that one of appellant's witnesses testified to a reduction in market value of $2,850, whereas another of appellant's witnesses expressed the opinion that there was

a net *benefit* to the appellees of $10,490. Contrarily, the witnesses for appellees expressed their views that the "after" market value is reduced by $15,000 to $18,425.

The original tract (acreage estimates for which vary somewhat in the evidence, but which is said by appellee to contain 526 acres) is described as a long narrow boundary—a little over "two miles long." In general, the tract runs in an east-west direction for about two miles. Its narrow portion is in its north to south dimensions. Its southern boundary is the existing right of way of the Illinois Central Railroad; its eastern line abuts an inlet of Barkley Lake. The western side of the tract narrows to a point, adjoining the railroad. A jutting plot on the north extends to the Eureka Ferry Road, which was the only public roadway serving the premises prior to the construction being made incident to the present condemnation.

The new road extends in a generally north-south direction (angling somewhat to the southeast), leaving about 179 acres west of the new road and about 337 acres on the east of the new highway. The total acreage in the highway taking is 9.52 acres. The right of way extends an overall length of 4,534 feet and is built on cuts and fills. The width of the right of way varies from a minimum of ninety feet upward to 170 feet. The appellant condemnor has provided for three access entranceways from each side of the new road, thus affording six different access points. It is recalled that the new highway is a free access road, so that other entranceways upon it may be had under appropriate circumstances.

The property owner and his evaluation witnesses placed an overall value of $500 per acre on the entire tract before the taking. Thus, their "before" value was fixed at $263,000. The witnesses explained that land values in the area have enhanced greatly by reason of new Barkley Lake. Since the land taken consisted of about ten acres, these witnesses generally placed $5,000 as the value of the taking. Then they testified

that the "after" value of the 179 acres severed on the west side of the road was reduced by sums ranging from $70 to $75 per acre.

It should be borne in mind that prior to the instant construction, the only public roadway serving the entire 526 acres was the Eureka Ferry Road. That roadway abuts the jutting peninsulalike tract on the northwest portion of the tract. Almost all of that frontage is west of the new highway. The appellee and his witnesses expressed the view that the highest and best use for the land is its potential development as lake-front residential sites and industrial sites. They based their reduction of "after" value of the 179 acres on its being "cut off" from the other tract and from the lake frontage. The witnesses described the new road as a veritable "barrier" between the two tracts because of cuts and fills. The opinion was expressed by appellee that a new road could have been a benefit to him, but that the present road damages him, since it does not traverse the farm in such way as to make the land most adaptable to lake site development.

The difficulty with this position, as we view it, lies in the fact that before the taking the 179 acres—and indeed many more acres just east of it—could hardly be characterized as lake frontage. Based on rough scaling of a map in the record, the new roadway is about eighty chains from the lake front—about a mile. Of course, most of the 179-acre tract is even more distant from the lake.

It is obvious from the record that extensive road building would have been required (and yet will be) before any portion of the original tract could have had value as a subdivision, whether residential or industrial. The evidence reflects that a ridge runs through the tract in an east-west direction, and that the terrain slopes from the ridge, northwardly and southwardly, to the respective north and south boundaries. The appellee stated that he had farm roads, following the contour of the ground, which ade-

quately served their farm purposes, but it is not contended that these roads would suffice for substantial subdivision development.

Under the new construction, the 179-acre tract will have more than 4,500 feet of frontage and the larger tract will have a like amount of frontage. It is inconceivable that the acquisition of so much frontage could have no enhancing value on the larger tract, whatever may be said of its depressing value on the 179-acre tract. None of appellees' witnesses made any expression of enhancement of value to the 337-acre tract.

■ Moreover, the reasons assigned by appellees' witnesses for their estimates of the reduction in "after" value of the 179-acre tract do not reasonably, rationally or logically impel the conclusions expressed by the witnesses. Since it is apparent that no part of the 179-acre tract could truly qualify as lake frontage, it follows that little, if any, damage befell it as being "cut off" from the lake. The 179-acre tract has adequate *access* to the lake, but it cannot be made to "front" on the lake; neither could it have so "fronted" before the taking. It is observed that appellees' witnesses stated that the 179-acre tract has potential for industrial development, but these witnesses declared it to be their view that the industrial potential is also damaged—because cut off from the lake. It seems obvious that this viewpoint is a *non sequitur*.

■ It is our conclusion, therefore, that the testimony of diminished "after" value to the 179-acre tract lacks that probative value required to support the verdict in this case. It may not be said that the evidence offered for appellees was devoid of probative value, but we think it is clear that the evidence lacks sufficient probative value to fully sustain the estimates of reduced value. This situation clearly falls within the rationale expressed in Com., Dept. of Highways v. Tyree, Ky., 365 S.W. 2d 472. As there noted, when it appears that the jury has accorded such evidence

more weight and value than the maximum to which it is entitled, the appellate court should set aside the verdict, either as palpably excessive or because it is not sufficiently supported by the evidence. We hold that the instant verdict is palpably excessive and is not sufficiently supported by evidence of probative value.

This view of the case renders it unnecessary to treat the other questions presented.

The judgment is reversed for new trial consistent with this opinion.