**COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,**

v.

**Woodrow ARNETT and Lula Arnett, his wife, et al., Appellees.**

Court of Appeals of Kentucky.

May 7, 1965.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Jarvis Allen, Pikeville, for appellant.

Marcus Mann, Earl R. Cooper, Salyersville, C. D. Carpenter, Stanton, for appellees.

DAVIS, Commissioner.

The appellees obtained judgment in the sum of $18,000 in this highway condemnation suit. The appellant Department of Highways seeks to reverse that award on the following claims of error: (1) It was error to permit valuation witnesses for appellees to express value opinions absent a showing of their qualifications to do so; (2) it was error to admit in evidence certain color photographs; (3) the verdict is palpably excessive and is not supported by competent and relevant evidence of probative value.

The acquisition of right-of-way involved here is for construction of a portion of the Mountain Parkway, sometimes referred to as the Eastern Kentucky Toll Road. The appellees owned a rectangular parcel of land, situated about 1.3 miles south of the courthouse at Salyersville. Prior to the taking, the tract consisted of about 5.9 acres, according to evidence for appellant. (Appellee Woodrow Arnett expressed the opinion that the tract contained 6½ acres.) The property had frontage on existing Kentucky Highway No. 7 of about 200 feet (a lot fronting on Highway No. 7 had been excepted from the appellees' boundary, so that the average width of appellees' tract was about 300 feet except for the lot carved from the northeastern corner). From

Highway No. 7 the original tract extended about 960 feet back to the Licking River.

The improvements on the tract consisted of a concrete block residence in which are four rooms and a bath on the first floor and three rooms on the second floor. There is a concrete block porch attached to a breeze-way leading to a private garage. Also located on the property is a corn crib. None of these improvements was taken. Since the taking appellees have erected a barn on the remaining land.

The right-of-way acquired consists of a strip of land containing 2.14 acres, which traverses the original boundaries in such manner as to leave a landlocked tract of 2.73 acres adjacent to the river on the back of the original tract. The net result is to leave a small irregularly shaped tract of 0.72 acres on which the improvements are situated. This remaining tract has frontage on Kentucky Highway No. 7 for about 68 feet. The new highway lies between the 0.72-acre tract and the severed tract of 2.73 acres, so that no access will exist between the tracts, nor will appellees have any highway access to the severed tract of 2.73 acres.

There will be a ramp on the acquired right-of-way; the edge of the travelled portion of the one-way ramp will be about 42 feet from the corner of the residence, but the right-of-way boundary line will extend within ten feet of the same corner of the house. Kentucky Highway No. 7 (which is not being changed) is about 35 feet from the residence already. Prior to the taking the elevation of the residence was, and it still is, somewhat lower than Highway No. 7.

Appellee Woodrow Arnett, who is the County Court Clerk of Magoffin County, stated that a sewer line which had served his residence before the taking had been clogged by reason of the taking, and that he will be required to take steps to correct this situation. He agreed that there is some periodic flooding of the rear portion of the original tract, but said that at the highest flood stage the water lacked 300 feet of reaching to his residence. Appellee Arnett gave details of four apple trees, a pear tree, two grape vines and a locust tree taken.

The disparity in the testimony is shown by the following schedule of the appraisal evidence:

|  | Appellant's Witnesses | |
| --- | --- | --- |
| BEFORE VALUE | AFTER VALUE | DIFFERENCE |
| $13,600 | $9,500 | $ 4,100 |
| $13,000 | $8,500 | $ 4,500 |
|  | Appellees' Witnesses | |
| $26,000 | $6,000 | $20,000 |
| $25,000 | $6,000 | $19,000 |
| $25,000 | $7,000 | $18,000 |

Appellee Arnett testified that he had purchased the property, including its improvements, in 1955 for $9500; he estimated that he had made an outlay of about $4000 on the residence since he purchased it. (It is significant that Mr. Arnett did not undertake to relate that estimated $4000 improvement account to its actual enhancement in market value.) Having thus outlined an original cost of $9500, supplemented by $4000 so expended, Mr. Arnett justified his before value figure of $26,000 by his stated opinion that market values in the area had doubled since his 1955 purchase.

The chief factor ascribed by Mr. Arnett to his depressed after value of his property

was his belief that he would need to raise the elevation of his residence. This will be required, he said, because the elevation of the ramp will be above the elevation of his home, and the noise of traffic on the ramp will be so intolerable as to require such remedial raising of the elevation of the house.

Mr. Arnett, and the other two valuation witnesses who testified in his behalf, sought to justify their before values by use of other sales considered comparable to the taken property. The difficulty is that the other sales upon which they relied were specific sales of building lots, and in at least one instance one of the witnesses for appellees was permitted to use as a "comparable" sale a lot acquired by the Department of Highways for this same right-of-way. When these witnesses were confronted, on cross-examination, with incidents of other sales (e. g., a 1960 sale of 60 acres, including a residence and barn, at $13,000, and a sale of four acres of bottom land with a residence for $11,000) they expressed some thought that appellees' property had greater value than the cited sales, but relied chiefly on their own "comparables" of building sites. The witnesses demonstrated themselves to be "qualified" to express opinions of value in the area.

■ Under all the circumstances of this case, we do not believe it was error for the trial court to refuse to strike the total testimony of these witnesses. Their evidence had some probative value. Cf. Com., Dept. of Highways v. Tyree, Ky., 365 S. W.2d 472, 477. Under the rule enunciated in the Tyree case, since the evidence of these witnesses had some probative value, it was proper to overrule appellant's motion to strike their entire evidence.

■ But here, as in the Tyree case, there is a material question whether the quantum of probative value deducible from this evidence is adequate to support the verdict. We are impelled to the conclusion that the verdict of $18,000, when considered in light of the entire record, is so palpably excessive as to shock the conscience at first blush. Thus, it appears that the jury below accorded more weight and value to the testimony of the witnesses for the appellees than its maximum probative value warranted; under these circumstances it is our responsibility to set aside the verdict. See Com., Dept. of Highways v. Lyons, Ky., 364 S.W.2d 336; Com., Dept. of Highways v. Williams, Ky., 383 S.W.2d 687; Com., Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922.

It will be recalled that the actual taking embraced 2.14 acres, and the landlocked area contains 2.73 acres. Thus, even assuming the landlocked 2.73 acres as utterly without value, appellees lose 4.87 acres of naked land. If this is rounded to five acres and ascribed a value of $2000 per acre (which is at a maximum even for town lot purposes, according to the evidence) the total award for land taken could be only $10,000. Then it would be necessary to conclude that the value of the 0.72 acres with all the improvements has diminished in value by $8000 in order to sustain the verdict. In addition to all this, it is necessary to conclude that the original investment of $9500 has nearly doubled, and that the approximately $4000 spent for improvement of the residence was all reflected in increased market value. Then, it would be required that the proximity of the ramp traffic (42 feet) be considered so depressing, along with the sewer line impairment, as to reduce the market value of the 0.72 acres and improvements by nearly 50%. We find this incredible.

■ What we have said disposes of points one and three urged by the appellant. We advert briefly to the second point having to do with the color photographs. The basis of the complaint against these pictures is that they are said to present a distorted view. However, there is no substantial showing that this is the case. The admission of photographs in evidence, so long as they may be said to fairly depict the matter sought to be portrayed, is

too well established to admit of debate now. In the absence of a showing that the color scenes are inaccurate or misleading, we conclude there is no merit in the contention of the appellant that they should have been excluded from the evidence. See Com., Dept. of Highways v. Williams, Ky., 317 S.W.2d 482.

The judgment is reversed for new trial and proceedings consistent with this opinion.

HILL, J., not sitting.