**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Russell ROGERS and Carl Henry Kent, Defendants-Appellants.**

**No. 71-1782.**

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1972.

P. Ause Brown, Gainesville, Fla., for James Russell Rogers.

Edwin S. Taylor, Gainesville, Fla. (Court-appointed), for Carl Henry Kent.

William Stafford, U. S. Atty., J. Worth Owen, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

On January 14, 1971, the Grand Jury for the Northern District of Florida, at Gainesville, indicted these appellants for robbing the Bank of Hawthorn (Hawthorn, Florida), 18 U.S.C. §§ 2113(a) and 2113(d). They were tried to a jury, found guilty, and sentenced individually to imprisonment for terms of twelve and twenty years. We affirm.

The robbery occurred on July 29, 1970. Fifteen days previously the appellant Kent was given a traffic violation citation in Indio, California, while driving a car similar to the one later used in the robbery, bearing California License Plate No. KGY 934. Another person, unidentified, was also in the car. A nickel-plated 38 special pistol on the floor of the vehicle was observed by the officer but not confiscated.

Five days before the robbery a "Clark Kent" registered at a motel in Jacksonville, Florida, with an auto license plate No. KGY 934.

The operator of the Garden Court Motor Hotel, Jacksonville, identified both Kent and Rogers as being guests in his hotel on July 26, 27, and 28. Kent alone registered and described his auto as a Pontiac with Tag No. KGY 931. The motel operator spoke twice with Kent during his stay. He saw Rogers only once.

On July 29, at about 2 o'clock p.m., two armed white men, wearing stocking masks, gloves and hats robbed the bank. The weapons were described as a nickel-plated 38 special and a 22 revolver. Neither of the weapons were later recovered.

The following employees of the bank were present at the robbery: Mrs. Essie McClendon, Elaine Spencer, Jo Ann Shepherd, Betty Coggins, and Joan Varnes. Three customers were there, R. L. Shipman, Dolly Watts, and Jewel Wilson, in addition to Sam Arrants, an N.C.R. service man. These individuals were herded into a back room. Mrs. McClendon, the cashier, was ordered at gunpoint to take the robbers to the vault to get the money, where they took $4,514. Afterwards, all were ordered into a restroom and told to stay five minutes before coming out. The robbers were in the bank from five to fifteen minutes.

From across the street, Shirley Roberts and Mrs. Alice Scheerer saw the robbers enter and leave the bank. A young boy named Mark Knabb observed the robbers entering the bank, rode home on his bicycle for pencil and paper, and took down the license plate number on the car used by the robbers. The number was 2E 9549, which it later developed had been stolen from an Avis rental car in Jacksonville.

Later in the day of the robbery a dairy employee discovered a 1956 Star-Chief Pontiac automobile lodged in the bushes about fifty yards off U. S. Highway 301, north of Hawthorn. It had been ditched or wrecked and it bore the same tag number as that observed by young Mark Knabb at the scene of the robbery.

I

*Kent's Appeal*

Kent raises only one point. He urges that he should have a new trial because the Government allegedly followed a photographic identification procedure "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification", a claim which is to be evaluated in light of the totality of the surrounding circumstances, Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247.

In *Simmons* it was said:

"It must be recognized that improper employment of photographs by po-

lice may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. The danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit the employment either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973, [18 L.Ed.2d 1199], and with decisions of other courts on the question of identification by photograph."

See, also, United States v. Richardson, 5 Cir., 1970, 428 F.2d 1152; United States v. Ervin, 5 Cir., 1971, 436 F.2d 1331, 1333; 18 U.S.C. § 3502 [§ 701 of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351].[1]

The trial jury heard testimony from four of the bank employees and from the service man Arrants. All were subjected to thorough cross examination by able counsel for Kent, see United States v. Elliott, 5 Cir., 1971, 437 F.2d 1253, 1254; United States v. Pollack, 5 Cir., 1970, 427 F.2d 1168, 1169; United States v. Agins, 5 Cir., 1970, 429 F.2d 28, 29.

Mrs. McClendon, the cashier, had been shown photographs but had not then identified the defendants, although she thought some of the photographs resembled them. She recognized the defendants at a later lineup, where defense

1. 18 U.S.C. § 3502—The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in any trial court ordained and established under article III of the Constitution of the United States.

As indicated in the main body of the opinion, we hold that there was no substantial likelihood that Kent was the victim of photographic identification procedure so impermissibly suggestive as to give rise to irreparable misidentification. The case, therefore, is decided without resort to 18 U.S.C. § 3502.

counsel was present. At a hearing before the United States Commissioner, Kent's "features were so predominant that I couldn't help but realize that he was definitely the man".

The key question on cross examination was:

"Q. Now, you are saying that when you had ample time to sit down on different dates and examine pictures, that was so long ago that you cannot remember, but on the day that you were petrified and all you could think about was a man behind you with a gun, that you can now come in and make positive identification of these people after a much longer length of time.

"A. Yes, I can."

Jo Ann Shepherd did not recall that one face had twice been shown in photographs, she identified both men at the lineup, and she identified Kent in the courtroom.

Betty Coggins had identified the defendants at the lineup, identified them in Court, and was positive, "with no doubt", of her in-court identification. She had been shown two pictures of the same man, Kent, some time prior to the lineup.

Joan Varnes, the fourth bank employee, identified both men at the lineup, there was no doubt in her mind that these "were the men" who committed the robbery. She remembered no details about the photographs and could not recall that she had seen two photographs of the same man. She remembered that Kent stood number four in the lineup and Rogers stood at the number one position.

Samuel Arrants, the National Cash Register Company repair man attended the lineup and had no doubt of the identity of the robbers, was "positive and willing to swear to it". He had picked Kent's photograph as "one of the possibilities". The men wore stocking masks but he had gone by "the nose, the cut of the eyes, the shape of their mouths, the square cut of their chins".

Mrs. Scheerer, the lady who saw the men from across the street as they entered and left the bank, was called as a witness by the defendant Rogers. She had attended the lineup in Gainesville, where she identified Kent but not Rogers. She identified Kent in the courtroom.

■■ This Court recognizes the difficulty of identifying people who wear stocking masks while committing a robbery. Nevertheless, it cannot be said that such individuals are immune to identification. The jury heard the evidence and found Kent guilty beyond a reasonable doubt. In the totality of the surrounding circumstances we find no substantial likelihood that Kent was the victim of photographic identification procedures so impermissibly suggestive as to give rise to irreparable misidentification.

Kent's conviction is affirmed.

## II

### *Rogers' Appeal*

■ Rogers complains vigorously of the failure to give him a preliminary trial until January 7, 1971, although he had been arrested in St. Louis on August 31, 1970. The indictment came on January 14, 1971.

The circumstances may best be described by repeating the findings of the United States District Court for the Northern District of Florida when Rogers filed a petition for habeas corpus in order to obtain a preliminary hearing (December 2, 1970).

"Petitioner was arrested in St. Louis, Missouri, on August 31, 1970, on the basis of a complaint filed against petitioner by the Federal Bureau of Investigation. On the same day petitioner was taken before the United States Commissioner for the Eastern District of Missouri, Garnet W. Taylor, and advised of his rights, wherein he in turn told the Commissioner that he had his own private counsel, Edward I. Daviddon, of St.

Louis, Missouri. After setting bond at $25,000, the Commissioner passed the case until September 4, 1970, pending arrival of certified papers from this Court. On September 4, 1970, defendant was again presented before the Commissioner but petitioner's counsel was not present. At this time petitioner was advised of the contents of the complaint against him and of the warrant for his arrest. Having waived removal hearing on this date petitioner was removed to the Northern District of Florida per the order of United States District Judge James H. Meredith dated September 11, 1970. Bond was continued in the previous amount of $25,000. On September 22, 1970, petitioner was delivered to the custody of the United States Marshal for the Northern District of Florida. On November 20, 1970, the Court appointed counsel for petitioner."

The writ was denied.

On January 7, 1971, a preliminary hearing was conducted before Commissioner William H. Chandler, United States Commissioner for the Northern District of Florida, at Gainesville, Florida, and probable cause to detain Rogers was found.

On January 14, 1971, an indictment was returned and filed.

Rogers then moved on January 28, 1971, to dismiss the indictment on grounds of fundamental error and manifest injustice for delaying his preliminary hearing until evidence sufficient to hold him was gathered by the F.B.I. His motion was denied. In a written opinion of February 3, 1971, the District Judge for the Northern District of Florida said:

"Initially defendant urges that this Court dismiss the indictment returned against him on January 18, 1971, because of the Government's delay in affording him a preliminary hearing. As authority for this proposition defendant alludes to Title 18, United States Code, Section 3060(d). That statute merely provides that if compliance with other sub-sections of Section 3060 has not been given then the Court may in its discretion order the defendant's release without prejudice to the Government to charge him subsequently. On a previous occasion in a related habeas corpus proceeding this Court found that the Government was not bound to strict adherence to Section 3060 because defendant had waived the time limitations contained therein. Additionally defendant's having been indicted on January 18, 1971, has the same effect of his being 'recharged' as contemplated by subsection (d) of Section 3060. Defendant was given a preliminary hearing on January 7, 1971, which has rendered that issue moot. For the above reasons the motion to dismiss the indictment should be denied."

Title 18, U.S.C. § 3060(b) requires the judge, magistrate, or commissioner, as the case may be, to order a preliminary examination for the determination of probable cause within ten days for in-custody defendants, and within twenty days for defendants who are released, subject to the exceptions so provided in § 3060(c). Section 3060(c) provides as follows:

"With the consent of the arrested person, the date fixed by the judge or magistrate for the preliminary examination may be a date later than that prescribed by subsection (b), or may be continued one or more times to a date subsequent to the date initially fixed therefor. In the absence of such consent of the accused, the date fixed for the preliminary hearing may be a date later than that prescribed by subsection (b), or may be continued to a date subsequent to the date initially fixed therefor, only upon the order of a judge of the appropriate United States District Court after a finding that extraordinary circumstances exist, and that the delay of the preliminary hearing is indispensible to the interests of justice."

 We do not consider it necessary here to discuss all possible or hypothetical ramifications of 18 U.S.C. § 3060. Obviously, the purpose of it is that defendants are entitled to prompt preliminary hearings to determine whether there is probable cause for their detention. If such a hearing is not granted they are entitled to be released from custody, but they are subject to being again charged and submitted to proper procedures. A failure to grant a preliminary hearing does not acquit the defendant of the charges preferred against him.

In the case now before us, Rogers did have bond set, he first said he had private counsel, then he had counsel appointed for him, hearings had been set for him in St. Louis but they were aborted because of the absence of his privately retained counsel, he waived further proceedings in Missouri and agreed to be transferred to Florida, and he had the benefit of counsel when he was subjected to the lineup.

The only thing missing was a finding of probable cause for his detention. The failure in this regard might be excused on the basis of his waiver of further proceedings in Missouri. Even so, we think the District Court in December, 1970, when Rogers sought it, should have directed that he be released if not promptly given a preliminary hearing. That is all Rogers was entitled to, however, and it went only to his detention prior to indictment. Once indicted, the Government was entitled to hold him under the indictment and he was not entitled to have the indictment dismissed.

In fact, the statute expressly provides that if one is indicted before the date fixed for the preliminary hearing such a hearing shall not be required, 18 U.S.C. § 3060(e).

Rogers was tried within two months of the indictment, he had counsel at his lineup, he had not then asked for a preliminary hearing after waiving further proceedings in Missouri, the evidence was sufficient to support the conviction, and the punishment imposed by the District Court, although different to that imposed on the other defendant, was within statutory limits. His contentions in regard to these items are therefore rejected.

The convictions of both Kent and Rogers are

Affirmed.