**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Freddie Lee TAYLOR and James Crawford Hicks, Defendants-Appellants.**

**No. 75–2558.**

United States Court of Appeals, Fifth Circuit.

April 21, 1976.

E. C. Deeno Kitchen (Court appointed), Brian S. Duffy, Tallahassee, Fla., for Taylor.

Daniel J. Wiser, Tallahassee, Fla. (Court appointed), for Hicks.

Clinton Ashmore, U. S. Atty., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and GEE, Circuit Judges:

TUTTLE, Circuit Judge:

Appellants James Crawford Hicks and Freddie Lee Taylor were convicted by a jury under 18 U.S.C. §§ 2113(a) and (d) and 18 U.S.C. § 2, for armed robbery of a federally-insured state bank. Briefly stated, the facts surrounding the robbery and their arrests are as follows: at approximately 9 A.M. on February 10, 1975, the Havana State Bank in Havana, Florida, was robbed of about $6,700 at gunpoint by two men wearing masks. The robbers took the money, ordered everyone present into the bank vault, and locked them inside. A bank camera, tripped after the bank personnel were locked in the vault, took pictures of the

robbers. A local grocer saw two men pass his storefront window immediately after the robbery, and saw one of the men's faces. Approximately one hour later, appellants Hicks and Taylor were stopped, questioned, and their car searched by consent in Bainbridge, Georgia by a county sheriff. Two bank tellers present during the robbery then went to Bainbridge but were unable to identify appellants as the perpetrators of the robbery when confronted face to face with them. Appellants were thereupon released, but were arrested the following day in Tallahassee, Florida, by F.B.I. agents, on the strength of some of the bank photographs taken during the robbery. Appellants were indicted under the federal statutes cited above on April 2, 1975, pleaded not guilty, and trial commenced on June 4, 1975, with the jury returning a guilty verdict on June 6th. This appeal followed.

Since appellants have raised a number of issues, not all of which pertain to both of them, we will discuss their arguments individually.

### JAMES CRAWFORD HICKS:

Appellant Hicks' first contention is that the district court erred in admitting into evidence certain in-court identifications of him by government witnesses; these identifications, appellant argues, were tainted by a lineup conducted without the presence of any defense counsel, on February 13, 1975 at the Tallahassee Police Department. The government asserts that Hicks voluntarily waived any right to counsel at the time the lineup was held.

Appellant's argument is without merit in light of the holdings in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), in which the Supreme Court determined that a pre-indictment lineup is not a "critical" stage for purposes of the Sixth Amendment right to counsel. The due process standards for evaluating pre-indictment lineups without counsel, the Court held, are those enunciated in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), forbidding lineups that are "unnecessarily suggestive and conducive to

irreparable mistaken identification." 406 U.S. at 691, 92 S.Ct. at 1883, 32 L.Ed.2d at 418. Here the lineup at issue occurred three days after the robbery, prior to any preliminary hearing, and well over a month and a half prior to the time at which both appellants were finally indicted, on April 2nd. Thus, the only question for this Court to consider is whether the lineup itself was conducted under circumstances which were unnecessarily suggestive or conducive to irreparable mistaken identification. Appellant has not alleged the existence of any such lineup conditions as would justify our finding that the in-court identifications by the government witnesses who were present at the lineup were tainted in any way. There have been, for example, no allegations that the other persons in the lineup possessed physical characteristics drastically dissimilar to those of appellant, thus clearly singling him out and suggesting him for identification to the government witnesses. Consequently, we find that the pre-indictment lineup at issue here did not violate appellant's due process rights.

Hicks next argues that the district court erred in admitting into evidence contact prints made from the film taken by the bank camera after the tellers and a bank official, Henry Slappey, were locked in the bank vault. Appellant contends that the government failed to lay the proper foundation for admission of these photographs since none of the eyewitnesses to the robbery testified that the pictures accurately represented the bank interior and the events that transpired. *See Mikus v. United States,* 433 F.2d 719 (2d Cir. 1970); *United States v. Hobbs,* 403 F.2d 977 (6th Cir. 1968).

In the case before us it was, of course, impossible for any of the tellers to testify that the film accurately depicted the events as witnessed by them, since the camera was activated only after the bank personnel were locked in the vault. The only testimony offered as foundation for the introduction of the photographs was by government witnesses who were not present during the actual robbery. These witnesses, however,

testified as to the manner in which the film was installed in the camera, how the camera was activated, the fact that the film was removed immediately after the robbery, the chain of its possession, and the fact that it was properly developed and contact prints made from it. Under the circumstances of this case, we find that such testimony furnished sufficient authentication for the admission of the contact prints into evidence. Admission of this type of photographic evidence is a matter largely within the discretion of the court, *Moore v. Louisville & Nashville R.R. Co.,* 223 F.2d 214, 216 (5th Cir. 1955), and it is clear that the district court did not abuse its discretion here. *See People v. Bowley,* 59 Cal.2d 855, 859, 31 Cal.Rptr. 471, 382 P.2d 591, 594 (1963), where the California Supreme Court recognized that in certain instances photographs may be admissible as probative evidence in themselves, rather than solely as illustrative evidence to support a witness' testimony, provided that sufficient foundation evidence is adduced to show the circumstances under which it was taken and the reliability of the reproduction process.

Appellant Hicks' final alleged ground for reversal is the allegedly improper introduction into evidence, ostensibly for impeachment purposes, of the testimony of a government witness. Hicks contends that: (1) the testimony at issue was not admissible to impeach the other government witness involved, Mary Ruth Cromartie, because the testimony of Ms. Cromartie did not take the government by surprise; and (2) that even if the testimony were admissible for impeachment purposes, the district court erred in permitting the prosecution to argue it to the jury in his closing statement as substantive evidence.

■ During the trial the government offered as a witness Mary Ruth Cromartie, a woman who had been living with appellant Taylor at the time of the events in question. On direct examination, Ms. Cromartie repeatedly denied that she had ever had any conversations with Taylor in which he had implicated himself in the instant bank robbery. Immediately following her testimony,

the government called Special Agent Kessler, over defense counsel's objections, for the purpose of impeachment. Kessler testified he had interviewed Ms. Cromartie prior to trial and that she had said that on February 9, 1975, Taylor had told her he was going to get a lot of money for her and the baby, that there was "talk" that Taylor and Hicks had stashed the money and changed clothes in Georgia, and that Taylor had said he was going to get the money. Appellant contends that the admission into evidence of this testimony by Kessler constituted reversible error, since immediately prior to Ms. Cromartie's taking the stand, Taylor's counsel exhibited to the district court and the prosecutor an affidavit executed by her on May 9th in which she swore that Taylor had never stated to her that he had participated in the robbery of any bank. The production of this affidavit, appellant Hicks argues, eliminated the necessary element of surprise at Ms. Cromartie's on-stand testimony to allow the government then to impeach her via Agent Kessler. *See United States v. Dobbs,* 448 F.2d 1262 (5th Cir. 1971). Since the issue of surprise is essentially a fact question, however, and our examination of the record has not revealed the existence of any indicators, other than the last-minute production of the Cromartie affidavit by defense counsel, that the witness would recant the gist of her previous interview with Agent Kessler, we cannot conclude that the district court abused its discretion in deciding, as it apparently did, that the necessary element of surprise was present. *Cf. United States v. Johnson,* 427 F.2d 957, 960–61 (5th Cir. 1970).

■ Appellant Hicks' argument with respect to the prosecutor's use of Kessler's impeaching testimony in his closing remarks, however, presents a much closer question. The statements objected to are as follows:

"[Ms. Cromartie] had previously seen [Taylor] with a gun . . . and . . . he had told her that he was going to get a lot of money for her child.

. . . [S]he knew from his actions and the things he told her, that he had participated in robbing this Havana State Bank, and that he had, on his way to Bainbridge, he had stopped up in Georgia some place and had stashed the money and the clothing, and that he had changed clothing and they had stashed the money and the clothing.

There is some talk about when are you going to get the money, and I believe the talk was that he would probably get it on the weekend, but anyway, I am going to leave that there."

Appellant's attorney objected to these remarks by the prosecutor, but his objections were overruled. While it is true that this line of closing argument was improper since the government was using Kessler's impeaching testimony for substantive purposes, *United States v. Johnson,* 427 F.2d 957, 961 (5th Cir. 1970), in light of the overwhelming evidence of appellant's guilt we conclude the admission of these statements was harmless error. F.R.Cr.P. 52(a). Appellant was identified as one of the perpetrators of the robbery by two bank employees who were eyewitnesses to the crime, and the government also adduced a significant amount of circumstantial evidence from which the jury easily could have found appellant guilty of the crime with which he was charged.

FREDDIE LEE TAYLOR:

Appellant Taylor's first alleged point of error, the district court's admission into evidence of the bank camera's photographs of the robbers without an adequate foundation, has already been discussed and has been found to be without merit.

Like appellant Hicks, Taylor has challenged the government's impeachment of certain of its own witnesses: Mary Ruth Cromartie and Joe Bloxham. We have already discussed both the admissibility of Agent Kessler's impeaching testimony as to Ms. Cromartie and the prosecutor's misuse of that testimony in his closing argument, and have found no reversible error. We now turn to the portion of the government's case dealing with the testimony of Bloxham, appellant Taylor's stepfather. Bloxham testified that Taylor had visited his house on the evening of the robbery and that the day after his visit Bloxham had discovered that a gun he usually kept in the bookcase portion of his bed and which had been in its place on the afternoon of February 9th was missing. Bloxham testified he found the gun the following Wednesday between the head of his bed and the mattress, but that he could not produce the gun at trial because it had been stolen from his car on April 24, 1975. (The FBI contacted Bloxham the Friday prior to trial and he told them of the weapon's disappearance on the 24th.)

Following Bloxham's testimony, the government called Agent Kessler, who testified that he had thoroughly searched Bloxham's room for the gun, and stated that if it had slipped down between the mattress and the bed he would have found it. Appellant Taylor argues that Kessler's testimony was improperly admitted since the government was aware of the gist of all of Bloxham's testimony well before trial. While the general rule is that one may not impeach one's own witness without a showing that one is "really surprised at his testimony," *Young v. United States,* 97 F.2d 200 (5th Cir. 1938), this rule does not forbid a party from introducing other evidence to dispute the facts testified to by his witness, as the government did here. *See, e. g., Duffy v. National Janitorial Services, Inc.,* 429 Pa. 334, 240 A.2d 527 (1968); *see generally* McCormick on Evidence, § 38 at 75 (2d ed. 1972), 81 Am.Jur.2d, *Witnesses,* § 625 (1976). In light of the admissibility of Kessler's testimony on these grounds, we do not find the prosecutor's closing statement that he "put Mr. Kessler on the stand so you could see what the situation was . . .. The pistol was not in that room at the time Mr. Bloxham said so" to have been improper. In making this statement the prosecutor was doing no more than commenting on evidence that had been properly admitted.

Appellant Taylor's next contention is that the government failed to

comply fully with the district court's pretrial *Brady* order requiring the government, *inter alia,* to furnish the defense with "any evidence favorable to [the] defendant, whether such evidence is material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Pursuant to this order, the prosecutor exhibited to Taylor's counsel certain contact prints which had been developed from the film located in the bank camera, none of which depicted the heavier-set of the two robbers (identified by eyewitnesses as Taylor) wearing a mask. The government *did* furnish Taylor's attorney, however, with contact prints which showed the robber *after* he removed his mask. Taylor contends that the prosecution had a duty to furnish the defense with the prints showing the masked robbers so that the credibility of certain eyewitness' in-court identifications could have been challenged. We find this argument speculative at best; it is difficult to see how the prosecutor's failure to provide the prints contended for could have harmed Taylor's case. There is no suggestion that in the pre-trial conferences in which the prints were exchanged there was any misrepresentation, deceit or concealment on the part of the prosecutor. Knowing that the pictures were produced by a camera which was automatically tripped, counsel surely must have known that the negatives had to be in the form of a reel. Under the full pre-trial disclosure followed in this case, there is no indication at all that had counsel asked for the reel it would not have been furnished under appropriate conditions for security.

Finally, appellant Taylor asserts that the jury verdict is not supported by the weight of the evidence. We have examined the record carefully and have concluded that there is ample evidence from which the jury could have found appellant guilty. Appellant was positively identified at trial by a bank employee and a bank official, both of whom were eyewitnesses. While the robbers were both wearing masks at the time, this Court has held that such a disguise does not necessarily render the person wearing it immune from identification. *United States v. Rogers,* 455 F.2d 407 (5th Cir. 1972). Coupled with other identifications of appellant by persons in the area immediately following the robbery, and the strong circumstantial evidence produced by the government at trial, the jury was clearly justified in returning a guilty verdict.

For the reasons stated above, the judgments of conviction as to both appellants are AFFIRMED.