**Ronnie Edmond LITTON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

April 1, 1980.

Jack Emory Farley, Public Advocate, Kevin M. McNally, J. Vincent Aprile, II,

Asst. Public Advocates, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

LUKOWSKY, Justice.

Litton was convicted of the second degree burglaries of the Virgie Pharmacy and the adjoining Virgie Clinic. He was sentenced to two consecutive ten year terms of imprisonment. He appeals. We reverse and remand.

■ This case requires us to judicially define the term "inhabited building" as it is used in the burglary statutes, KRS 511.-010–.040. The word "inhabited," added by the 1978 Legislature, is not statutorily defined. Commonly, to inhabit means "to occupy as a place of settled residence or habitat: live or dwell." Webster's Third New International Dictionary 1163. However, the statute uses "dwelling" to mean "a building which is usually occupied by a person lodging therein." KRS 511.010(2). Therefore, a somewhat different meaning must have been intended by the Legislature.

The 1971 commentary to the penal code reveals the attitude of the Legislature toward burglary:

> "The crime must be committed in a 'building', defined in KRS 511.010(1) in such a way as to include all structures in which people lodge, work, or otherwise conduct business. With this definition, burglary is designed to encompass all unlawful intrusions which are accompanied by alarm and danger to occupants. It is not intended to provide sanctions for intrusions into things such as vending machines, silos and other structures which do not house persons."

■ The 1978 amendment provides three distinct categories of burglary: first degree when a dwelling (or other circumstances not here relevant) is involved; second degree when there is unlawful entry into an inhabited building; and third degree when

there is unlawful entry into an uninhabited building. These crimes are made class B, C, and D felonies respectively. In order to give effect to this statutory scheme, we conclude that the drafters of the 1978 amendment meant to base the second degree/third degree distinction on the presence or absence of persons in the building at the time of the burglary, because the potential for physical injury is made greater by the presence of other persons who may be encountered in the process of the burglary. *See* K. Brickey, Kentucky Criminal Law, Secs. 12.04 & 12.05 (1978 Supp.); J. Palmore, I Instructions to Juries in Kentucky, Sec. 3.02 comment (1979 Supp.). This usage of "inhabited building" is in accord with *People v. Warwick*, 135 Cal. App. 476, 27 P.2d 396 (1933), a case which interpreted a statute making "every burglary of an inhabited dwelling house or building" a first degree burglary. That court held that while a dwelling house does not cease to be "inhabited" when persons are temporarily absent, a building such as a place of business is "inhabited" only when some person is there.

■ The trial judge defined "inhabited building" in his instructions in terms which would permit conviction of second degree burglary on the basis that the building "is routinely or regularly occupied by a person or persons for periods of time." However as we have demonstrated, second degree burglary is committed only when a person or persons, other than the burglar or burglars, are present in the building at the time of the burglary. Consequently, these convictions must be reversed and a new trial granted. If the evidence is substantially the same on this point at the new trial, the jury should be instructed only on third degree burglary.

Because this case will be retried, it is necessary to address two other issues raised by Litton.

■ The Commonwealth introduced three photographs which it sought to prove were taken by an automatic camera while the burglary was in progress. Litton argues that the foundation for admission of these photographs was insufficient.

When the investigating officers arrived at the Virgie Pharmacy, they found that the wires to the burglar alarm system had been pulled or cut apart. Later that day they found the automatic camera from the alarm system pedestal in some brush about 150 feet away and across the road from the pharmacy. The wires to this camera matched the ones remaining in the pharmacy. The officers turned the camera over to the owner of the pharmacy who removed the film and sent it to the installer of the burglar alarm who returned these three photographs to the pharmacy owner.

The pharmacy owner explained that the burglar alarm system was only activated upon closing and securing the business during non business hours, that the automatic camera could be started in several ways such as through the magnetic switches on the doors and windows or the motion detector, and that batteries inside the camera would continue its operation even if the wires leading to it were severed. The owner identified the background in the photographs as being a fair and accurate representation of the area behind his pharmacy counter, an area not open to patrons. We conclude that the Commonwealth has laid a minimal foundation which authenticates these three photographs to the extent that it was not error to admit them as real evidence.

■ Photographs are most commonly admitted into evidence as demonstrative evidence on the theory either that they are merely a graphic portrayal of oral testimony or that a qualified witness adopts the photograph as a substitute for words. *See* McCormick on Evidence, Sec. 214 (1972); 3 Wigmore on Evidence, Sec. 790 (Chadbourn rev. 1970). When a photograph is used as demonstrative evidence, the witness need not be the photographer, nor must he have any personal knowledge of the time, method, or mechanics of the taking of the photographs. The witness is only required to state whether the photograph fairly and accurately depicts the scene about which he

is testifying. *See Commonwealth, Dept. of Highways v. Arnett*, Ky., 390 S.W.2d 187 (1965); *Carson v. Comm.*, Ky., 382 S.W.2d 85 (1964); G. Lawson, Kentucky Evidence Law Handbook, Sec. 12.05 (1979).

▮▮▮ Photographs can be admitted as real evidence in a proper case. As stated in Wigmore:

"With later advancements in the art of photography, however, and with increasing awareness of the manifold evidentiary uses of the products of the art, it has become clear that an additional theory of admissibility of photographs is entitled to recognition. Thus, even though no human is capable of swearing that he personally perceived what a photograph purports to portray (so that it is not possible to satisfy the requirements of the 'pictorial testimony' rationale) there may nevertheless be good warrant for receiving the photograph in evidence. Given an adequate foundation assuring the accuracy of the process producing it, the photograph should then be received as a so-called silent witness or as a witness which 'speaks for itself'."

3 Wigmore on Evidence, Sec. 790 (Chadbourn rev. 1970). This language was expressly adopted in the Old Dominion in *Ferguson v. Commonwealth*, 212 Va. 745, 187 S.E.2d 189 (1972). Other courts have also held that a photograph can be admitted into evidence not merely as illustrative of testimony but as probative evidence of what it shows. *People v. Bowley*, 59 Cal.2d 855, 31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178 (1963); *People v. Doggett*, 83 Cal. App.2d 405, 188 P.2d 792 (1948). We agree and hold that where a reasonable foundation indicating the accuracy of the process producing the photograph is laid, it can be received as real evidence having inherent probative value and such credibility and weight as the trier of fact deems appropriate.

▮▮▮ We come now to the crux of the argument by Litton: whether the accuracy of the process producing the photographs in question was adequately assured? We begin by explaining that "accuracy of the process" does not necessarily require that the scientific and mechanical procedures involved be detailed in every case. Such expert foundation may initially seem appropriate. But as Judge Peck noted in *United States v. Hobbs*, 6th Cir., 403 F.2d 977, 978 (1968),

"[A] moment's reflection will dispel that attraction. Concerning any photographic operation only the most scholarly expert could testify as to the manner in which the original image is transmitted through the lense of the camera to the emulsion on the film or plate, the development of the latent image, the printing by a contact or projection process, and concerning the chemical procedures involved. Even where an occasional qualified witness may be available to testify as to such details such testimony would obviously be irrelevant and immaterial. What is material is what the rankest box camera amateur knows, namely that he 'gets' what he sees."

In *United States v. Taylor*, 5th Cir., 530 F.2d 639 (1976) a bank camera was tripped after all present were locked in the bank vault. The foundation testimony described the manner in which the film was loaded, how the camera was activated, that the film was removed after the crime, that the film was developed, that prints were made, and the chain of custody. The court found there that the testimony furnished sufficient authentication for the admission of the prints into evidence. Similar foundation was laid for the three photographs in this case.

Litton argues that the time the photographs were taken was not adequately established, that the camera could have been activated at some time when he was shoplifting in the pharmacy instead of burglarizing it, but has offered no evidence to that effect. There was sufficient evidence of the reality surrounding the photographs to remove the question of timing from speculation. "Even if direct testimony as to foundation matters is absent, however, the contents of a photograph itself, together with such other circumstan-

tial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." *United States v. Stearns*, 9th Cir., 550 F.2d 1167, 1171 (1977).

■ Litton also challenges the foundation for the photographic evidence because the installer of the burglar alarm, who either made the photographic prints himself or had a commercial laboratory do the task, did not testify. Such testimony would have perforce made the foundation more solid. But, the pharmacy owner stated he removed the film, sent it to the installer, and received the photographs in due course. The Commonwealth has demonstrated prima facie authenticity. Litton has not suggested that the photographs are composites or otherwise faked. In the absence of a showing of irregularity in the production of a proffered photograph, we need not set up "unrealistic roadblocks" and "deprive the trier of the facts of evidence not subject to the foibles of the imperfect memories and the passions and prejudices of human witnesses." *United States v. Hobbs*, 6th Cir., 403 F.2d 977, 978–79 (1968).

■ This opinion should not be read, however, to encourage those who practice brinkmanship. We hold that proper authentication and admission of photographic evidence is a matter largely within the discretion of the trial court. *See United States v. Taylor*, 5th Cir., 530 F.2d 639 (1976). The trial judge did not abuse his discretion in admitting these three photographs into evidence.

■ Finally, Litton argues that certain evidence, the fruits of a warrantless search of a borrowed automobile, upon which his arrest was based, should have been suppressed. Although the trial judge denied the motion to suppress, he did not expressly rule on the propriety of the search. Instead, he held only that the officers had a duty to further investigate the burglary and the suspects. This requires us to vacate the order denying the motion for suppression so that the motion may be considered by the trial court in the light of

*Wagner v. Commonwealth*, Ky., 581 S.W.2d 352 (1979).

The judgment of the Pike Circuit Court is reversed and the cause remanded for further proceedings consistent herewith.

All concur except STEPHENS, J., who did not sit and STEPHENSON and AKER, JJ., who dissent.

STEPHENSON, Justice, dissenting.

Ordinarily burglary is thought of as a surreptitious crime, a crime committed by stealth. Thus in my view, the definition of the term "inhabited building" adopted by the majority opinion is too restrictive and not in accord with legislative intent. The practical result of the majority opinion is to repeal the second degree burglary statute. While I have no statistics on the subject, I have the opinion that it would be a rare case indeed for a business building to be burglarized during business hours or while persons are present on the business premises.

"Habitat" is included in the definition of "inhabited" and as defined by Webster means "a place where anything is commonly found." Thus "inhabited building" can reasonably be defined as a building other than a dwelling where people are usually found during regular periods of time. I would give effect to the statute on second degree burglary by adopting the definition of "inhabited building" as set out in the trial court's instructions. This is the only construction that gives effect to the legislative intent to have an effective second degree burglary statute.

AKER, J., joins in this dissent.