**In the Matter of the WELFARE OF S.A.M.**

No. C8–97–367.

Court of Appeals of Minnesota.

Oct. 28, 1997.

Hubert H. Humphrey III, Attorney General, St. Paul, for respondent.

Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson, Assistant Hennepin County Attorney, Minneapolis, for respondent.

William E. McGee, Hennepin County Public Defender, Renee Bergeron, Assistant Public Defender, Michael W. Holland, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by HARTEN, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

On appeal from the district court's adjudication of delinquency, S.A.M. challenges the admission of a videotape and the sufficiency of the evidence to support the assault adjudication. The district court did not abuse its discretion in admitting the videotape, and the evidence was sufficient to prove the petition. We affirm.

## FACTS

Following an incident on a Metropolitan Council Transit Organization (MCTO) bus, S.A.M., a juvenile, was charged by petition with assault in the second degree. At trial the state was unable to produce a witness who had observed the alleged assault. Instead the state introduced a videotape of the incident made using on-board automatic recording equipment. The state also produced testimony from three witnesses to authenticate the videotape.

Jeffrey Williams, the video technician who services the video camera and video cassette recorders on MCTO buses, testified about the location of cameras on the buses and how they operate. He testified that when he last serviced the cameras on the bus where the

assault occurred, they were in good working order.

Sergeant Daniel Kellerman of the MCTO police testified that he retrieved the original videotape of the incident in a sealed evidence bag from the MCTO police evidence locker the day following the incident. When he retrieved the tape, Kellerman placed a tag on it with a number matching the MCTO police complaint number of the incident. After viewing the tape, Kellerman kept it in a locked locker in his office until he brought it to court on the day of trial.

Dale Patrin, the bus driver, testified that he observed a group of Roosevelt High students involved in what appeared to be a struggle in the back part of his bus but did not personally observe the assault. Patrin contacted the police at the request of one of the students. He testified that he did personally observe two of the events portrayed in the videotape. Those events, a teenager coming to the defense of the person assaulted and the arrival of the police, were accurately and truthfully depicted in the videotape.

The defense objected to introduction of the videotape, arguing that the authentication testimony was insufficient to demonstrate that the tape was what it purported to be. The objections were overruled, and the tape was admitted into evidence. The district court found that S.A.M. committed fifth degree assault and adjudicated him delinquent. This appeal followed.

## ISSUES

I. Did the district court err in admitting a videotape of the assault without authenticating testimony from a continuous observer of the events depicted in the videotape?

II. Is the evidence sufficient to adjudicate S.A.M delinquent?

## ANALYSIS

### I

Authentication of evidence in civil and criminal trials is governed by Rule 901 of the Minnesota Rules of Evidence. Minn. R. Evid. 1101(a) (applying rules of evidence to all Minnesota court proceedings); Minn. R. Evid. 901 (stating requirements for authentication and identification). Rulings on evidentiary issues such as relevancy, materiality, and foundation are committed to the sound discretion of the district court and will be reversed only when that discretion is clearly abused. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983). The evidentiary requirement for authentication as a condition precedent to admissibility is met only if the evidence is "sufficient to support a finding that the matter in question.is what its proponent claims." Minn. R. Evid. 901(a).

For purposes of proving content, a videotape is classified as a photograph. Minn. R. Evid. 1001(2) (defining "photographs" as still photographs, videotapes, X-ray films, and motion pictures). In practice, authentication of non-fungible objects such as photographs is usually provided by a witness, while fungible items like drugs or weapons are usually authenticated through a chain of custody or unique markings. 11 Peter N. Thompson, *Minnesota Practice* § 901.01, at 536 (2d ed.1992). Examples of authentication methods are set forth in Rule 901(b) "[b]y way of illustration only, and not by way of limitation." Minn. R. Evid. 901(b); *see* Thompson, *supra,* § 901.01, at 537 (noting nonexclusive list of examples and broadly phrased nature of Rule 901 reinforce discretion of trial judge and demonstrate appropriate reluctance to inject technicalities into properly functioning evidentiary system).

The first listed example of authentication is "testimony of [a] witness with knowledge" "that a matter is what it is claimed to be." Minn. R. Evid. 901(b)(1). This conventional method for authenticating photos is referred to as the *"pictorial witness theory"* because the photograph is thought to be a pictorial representation of what the witness observed. Several Minnesota cases have affirmed the admission of a videotape when it was authenticated by a witness who observed the events depicted on the tape, but no reported Minnesota case has ruled on the admission of videotapes using other methods of authentication. *See, e.g., State v. Williams*, 337 N.W.2d 689, 690–91 (Minn. 1983); *Scott v. State*, 390 N.W.2d 889, 892–93

(Minn.App.1986). None of the witnesses who testified at the trial observed the alleged assault by S.A.M., although one witness did observe other events depicted on the tape. Thus, the videotape could not be authenticated by a "witness with knowledge."

■ Rule 901(b)(9) provides an alternate method for authentication of various types of tangible evidence. Referred to by commentators as the *"silent witness theory"* when applied to photographs, this method allows for authentication through evidence describing a process or system. Minn. R. Evid. 901(b)(9). The evidence must both describe the process or system and show that it produces an accurate result. *Id.*

The necessity of an alternative to conventional authentication through a witness with knowledge is illustrated by the example of an X-ray image of a person's body. Because no person can see with the naked eye what an X-ray machine shows, an X-ray image could never be authenticated by a person who had contemporaneously observed what the X-ray machine depicts. 2 Charles T. McCormick, *McCormick on Evidence* § 214, at 15 (John W. Strong et al. eds., 4th ed.1992). Under 901(b)(9), the *"silent witness theory,"* X-ray images or other photographic-type evidence may be authenticated from evidence of the reliability of the process by which the image was made. *Id.* This theory applies to videotapes and photographs as well as to X-rays. *Id.* at 15, 17–18. The silent witness theory has been adopted in almost all jurisdictions. *Id.* at 15; *see, e.g., State v. Holderness,* 293 N.W.2d 226, 230–34 (Iowa 1980); *Department of Pub. Safety & Correctional Servs. v. Cole,* 342 Md. 12, 672 A.2d 1115, 1119–23 (1996); *Midland Steel Prods. v. International Union, United Auto.,* 61 Ohio St.3d 121, 573 N.E.2d 98, 105 (1991); *Brooks v. Commonwealth,* 15 Va.App. 407, 424 S.E.2d 566, 569 (1992); *see also Fisher v. State,* 7 Ark. App. 1, 643 S.W.2d 571, 575 (1982) (listing jurisdictions adopting the silent witness theory).

Because Federal Rule of Evidence 901 is identical to Rule 901, federal case law also provides guidance in interpreting Rule 901. Recent federal appellate decisions allow authentication of audiotapes and videotapes by testimony either "describing the process or system that created the tape," or by a witness with knowledge. *United States v. Strothers,* 77 F.3d 1389, 1392 (D.C.Cir.1996) (quoting *United States v. Dale,* 991 F.2d 819, 842 (D.C.Cir.1993)), *cert. denied,* —— U.S. ——, 117 S.Ct. 374, 136 L.Ed.2d 263 (1996); *see also United States v. White,* 116 F.3d 903, 920 (D.C.Cir.1997), *petition for cert. filed* (U.S. Sept. 25, 1997) (No. 97–6184). The eighth circuit has explicitly adopted an authentication standard for videotapes requiring a "fair and accurate representation," not coincidentally the same standard used for photos. *United States v. Roach,* 28 F.3d 729, 733 (8th Cir.1994); *see also United States v. Panas,* 738 F.2d 278, 286 (8th Cir.1984); *Hendricks v. Swenson,* 456 F.2d 503, 506 (8th Cir.1972) (applying pre-Rules standard).

The fifth circuit court has approved a three-element authentication standard for photographs produced from a videotape. *United States v. Clayton,* 643 F.2d 1071 (5th Cir.Unit B 1981) (involving photographs made from bank surveillance camera films and citing *United States v. Taylor,* 530 F.2d 639, 641–42 (5th Cir.1976) (same)). The authenticating elements are: (1) the reliability of the process by which the film or videotape was activated and made; (2) the chain of custody of the film; and (3) the reliability of the process by which photographs were made from a videotape. *Id.* at 1073–74. A Minnesota commentator has suggested a similar method, based on Rule 901(b)(9), for authenticating videotapes recording events not perceived by a human witness. *See* Bertrand Poritsky, *Minnesota Evidence Trialbook* 151 (1995) (videotape admissible when evidence describes how film was made, that process produced an accurate result, and that evidence was relevant; citing Minn. R. Evid. 901(b)(9)).

Some federal courts have endorsed a "partial authentication" theory. In other words, if part of a film has been authenticated by a contemporaneous observer, not all frames of the film or videotape must be authenticated. *Clayton,* 643 F.2d at 1074. Justice Kennedy concluded, in an opinion written when he was a ninth circuit judge, that intrinsic and extrinsic evidence may be combined to authen-

ticate a photograph. *United States v. Stearns,* 550 F.2d 1167, 1170–71 (9th Cir. 1977).

Several federal courts have applied the rules of evidence to allow authentication of photographs obtained in circumstances similar to those in this case. One court admitted photos without testimony of a contemporaneous observer because there was no such observer. *Taylor,* 530 F.2d at 641–42 (5th Cir. 1976). The photos made from a surveillance film were admitted to show events that occurred when all bank employees were locked in the bank's vault and therefore could not observe or testify to actual events. *Id.* The court admitted the photos based on (1) the manner in which the camera was installed; (2) the manner in which it was activated; (3) the fact that the camera's film was removed immediately after the robbery; (4) the chain of custody; and (5) the fact that the film was properly developed. *Id.* at 642. In *Clayton,* a case with similar facts but with the addition of contemporaneous observers, the fifth circuit followed *Taylor* and ruled that this method of authentication was not restricted to circumstances in which there had been no contemporaneous observers. *Clayton,* 643 F.2d at 1074; *see also United States v. Rembert,* 863 F.2d 1023, 1028–1029 (D.C.Cir.1988) (listing similar factors plus time/date stamp on photos and self-authentication aspects of event).

The language of Rule 901 and the instructive reasoning of the case law interpreting the identical federal rule compel us to reject S.A.M.'s argument that authentication of a videotape can only be made by a continuous observer who testifies from personal knowledge that the events are accurately portrayed. We also reject for several reasons S.A.M.'s claim that a seven-step process outlined in *Furlev Sales & Assocs., Inc. v. North Am. Automotive Warehouse, Inc.,* 325 N.W.2d 20, 27 n. 9 (Minn.1982), is required for authentication. First, the *Furlev* decision applied to audiotapes, not videotapes. Second, the process is only mentioned in a footnote reference. Third, Texas itself, one of the first jurisdictions to adopt the *Furlev* rule, has recognized that videotapes are inherently more reliable than audiotapes.

*Shaw v. State,* 730 S.W.2d 826, 828 (Tex.Ct. App.1987), *habeas corpus petition granted on other grounds sub nom. Shaw v. Collins,* 1992 WL 547969 (S.D.Tex. April 16, 1992), *aff'd,* 5 F.3d 128 (5th Cir.1993). Fourth, the foreign authority cited by *Furlev* as the source of the *Furlev* rule, *Edwards v. State,* 551 S.W.2d 731, 733 (Tex.Crim.App.1977), has not been strictly followed by that jurisdiction. *See* 3 Charles C. Scott, *Photographic Evidence* § 1297, at 129–30 (2d ed. Supp. 1994).

■ We conclude that the district court correctly ruled that the state could authenticate the videotape through testimony from witnesses other than those with personal knowledge of the event depicted. A videotape may be authenticated by testimony describing the reliability of the process or system that created the tape, as well as by testimony from an observer that the videotape is an accurate portrayal of the event, if the evidence sufficiently demonstrates that the videotape is what its proponent claims.

■ The testimony of the video technician demonstrated that the tape was made using a reliable process of automatic recording. His testimony showed (1) how the video was made, (2) that it produces an accurate result, and (3) some evidence on the chain of custody. The video technician established that the images from the two cameras on each bus are relayed to one VCR, which is contained in a locked box under one of the passenger seats. Only the technician, the MCTO police, and other maintenance personnel have keys to the locked boxes. The bus driver "partially authenticated" the tape under 901(b)(1) because he testified that a large portion of it including the arrival of the police (albeit not the portion depicting the assault) was a fair and accurate representation of what he had witnessed with his own eyes on the bus that day. The MCTO police sergeant testified to the chain of custody of the tape after it was made.

The testimony of these three persons, taken together, provided a sufficient authentication of the tape under Rule 901. The videotape was properly admitted because it was authenticated according to a method listed in 901(b) and consistent with the broad guide-

line for authentication set out in Rule 901(a): that is, evidence was produced showing that the tape is what its proponent claimed. That standard was clearly satisfied in this case, and the videotape was properly admitted into evidence.

## II

In reviewing a sufficiency of the evidence claim, this court must evaluate the record and the legitimate inferences from the record in the light most favorable to the conviction to determine whether the fact-finder could have reasonably concluded that the defendant was guilty of the charged offense. *Dale v. State,* 535 N.W.2d 619, 623 (Minn.1995). This analysis assumes that the fact-finder believed the state's witnesses and rejected contradictory evidence. *Id.* The credibility of witness testimony and the weight given to the evidence are issues for the trier of fact. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988).

S.A.M. was charged with assault in the second degree, but convicted of the lesser included offense of assault in the fifth degree. Assault in the fifth degree, or simple assault, occurs when a person "intentionally inflicts or attempts to inflict bodily harm upon another." Minn.Stat. § 609.224, subd.(2) (1996). A conviction for fifth degree assault requires proof that (1) the defendant "intentionally inflicted or attempted to inflict bodily harm" upon another and (2) that the assault took place at a particular time and place. 10 *Minnesota Practice,* CRIMJIG 13.13 (1990). "Bodily harm means physical pain or injury, illness, or any impairment of a person's physical condition." *Id.*

S.A.M. challenges the first element of fifth degree assault by arguing that if the videotape of the incident on the bus is inadmissible, there is no evidence identifying him as the perpetrator. Further, he asserts that even if admissible, the videotape is not substantive evidence of that which it "corroborates." Under this theory, the videotape would not be substantive evidence of anything, since no live witness can "corroborate" the incident depicted on the videotape; therefore it is a mere illustration or "pictorial evidence." This proposed distinction has been rejected in most jurisdictions. 2 McCormick, *supra,* § 214, at 14.

We decline to adopt a cramped reading of the Minnesota Rules of Evidence which would force trial judges to distinguish between photographs and videotapes admitted as substantive evidence and those admitted only as an "illustration" of a witness's testimony. Evidence, if admitted by a trial court, is admitted for all purposes unless the court rules otherwise or there is a contrary rule of evidence. Once properly authenticated, the videotape may be admitted as substantive evidence. "Corroboration," the requirement urged upon us by S.A.M., is a term not found in Rule 901, nor elsewhere in the Minnesota Rules of Evidence.

Because we have concluded that the videotape of the assault on the bus was properly admitted, it constitutes substantive evidence of the assault which it portrays. The district court stated that the videotape clearly identified S.A.M. as the perpetrator and further stated that "a picture is worth a thousand words." The videotape provided sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that S.A.M. committed fifth degree assault.

## DECISION

The videotape was properly authenticated by the state's uncontroverted testimony demonstrating the reliability of the process creating the videotape, the custodial chain of the videotape, and partial authentication of events depicted in the videotape. The evidence was sufficient to support the adjudication of delinquency.

**Affirmed.**