**In the Matter of the WELFARE OF S.S.E.**

**No. C3–00–1583.**

Court of Appeals of Minnesota.

June 5, 2001.

John M. Stuart, State Public Defender, Charlann Winking, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Alan L. Mitchell, St. Louis County Attorney, Leslie E. Beiers, Assistant County Attorney, Duluth, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge, RANDALL, Judge, and PETERSON, Judge.

## OPINION

RANDALL, Judge

Appellant challenges his delinquency adjudication for felony theft. Appellant argues that the district court erred by allowing the prosecutor to impeach appellant with a prior delinquency adjudication because adjudication is not a conviction and cannot be used for impeachment. In the alternative, appellant argues that even if the prior delinquency adjudication is admissible, the district court never determined on the record whether its impeachable probative value outweighed its prejudicial effect. Appellant further contends that the district court used his prior adjudication for an improper purpose by considering it as substantive evidence of appellant having committed the charged offense. Appellant also argues that the circumstantial evidence was insufficient to support his adjudication because no one saw him commit the theft and because there are rational alternative hypotheses to support his innocence. Because we find that the district court improperly used appellant's prior adjudication as substantive evidence to adjudicate appellant as delinquent, we reverse and remand.

## FACTS

Based on the following facts, appellant S.S.E. was charged by petition with felony

theft in violation of Minn.Stat. § 609.52, subd. 2(1) (Supp.1999). Appellant pleaded not guilty, and the case was set for an adjudication hearing.

On January 24, 2000, S.S.E. went to Fryberger Arena in order to complete a disposition from a previous juvenile adjudication by performing some community service work. Gordon Atol, the arena's manager, asked appellant to clean the lobby, wash windows, and vacuum. Atol never asked appellant to fix any doors. Shortly after Atol assigned appellant his cleaning duties, Atol told appellant that he needed to run some errands and that the concession manager, Vicky Michela, would be coming in shortly.

When Michela arrived, she discovered appellant at the door of the concession stand. Appellant had a hammer and a screwdriver in his hand. Michela testified at the hearing that appellant told her that Atol had asked him to repair the door. When she opened the concession stand door, it came off its hinges. After appellant left, Michela began doing some paperwork for the previous week's concession sales, which included working with the money generated from the sales. Michela brought the money to the arena in five plastic bags, which she carried in her closed briefcase. Shortly after beginning her paperwork, appellant asked Michela if she needed him to complete any work, so she asked him to re-hang a towel holder. Appellant completed this task and left the concession stand. Appellant returned a short time later and informed Michela that her car's headlights were on, so Michela left the stand unattended to go check on her car. After turning her headlights off, Michela returned to the stand to resume her paperwork, and, shortly thereafter, she discovered that two plastic bags were missing that contained approximately $858.

Appellant testified that he never told Michela that Atol had asked him to repair the concession stand door; instead he was "messing with" the door because he was bored. He further testified that he did not take the door off of its hinges; rather, he stated that he was taking a metal plate off of the door and that, when Michela opened the door, the handle came off. He denied telling Michela that her car's headlights were on, and he denied taking any money from the concession stand. But, appellant did testify that he knew that the concession stand was one of the areas in the arena likely to have money. Also, for the first time, appellant claimed that he saw a person named "Creamy" in the arena. In contrast, Michela and Atol both testified that they were the only people in the arena besides appellant.

The prosecutor asked appellant about a prior felony adjudication for receiving stolen property. Appellant's counsel did not object. The prosecutor also asked appellant about a second prior adjudication. Appellant's counsel then objected, and the district court sustained the objection. After hearing the testimony of appellant, Michela, Atol, and the investigating officer, the district court adjudicated appellant delinquent. This appeal followed.

## ISSUES

I. Did the district court err by allowing the prosecutor to impeach appellant with a prior felony delinquency adjudication?

II. Did the district court use appellant's prior adjudication for an improper purpose by considering it as substantive evidence of appellant's propensity to commit the charged offense?

III. Was the circumstantial evidence sufficient to sustain appellant's delinquency adjudication?

## ANALYSIS

### I. Impeachment Evidence

Appellant argues that the district court erred by allowing the prosecutor to use appellant's prior adjudication for receiving stolen property. Appellant contends that, because his adjudication was not a conviction, under Minn. R. Evid. 609, it could not be used for impeachment purposes. In the alternative, appellant contends that even if his adjudication could be used for impeachment, the district court erred by failing to determine whether its probative value outweighed its prejudicial effect.

The state argues that, because appellant did not object to the state's inquiry into appellant's prior adjudications, this issue is waived on appeal. The county attorney first asked appellant about his prior adjudication for receiving stolen property. Appellant's counsel did not object to this inquiry. The attorney then asked appellant about his prior adjudication for theft. Appellant's counsel objected, and the district court sustained the objection. Accordingly, the prior adjudication for receiving stolen property is the only "prior" at issue. Because of our decision on issue II, the use of appellant's prior adjudication as substantive evidence, we need not consider whether the admission of the prior delinquent act (unobjected to) is a plain error affecting a substantial right. *See Van Buren v. State*, 556 N.W.2d 548, 551 (Minn. 1996) (stating even if party failed to object, this court will consider plain error affecting substantial rights if error's effect denied defendant a fair trial).

### A. Admissibility of Prior Adjudication

The state contends that the holding of *In re Welfare of C.D.L.*, 306 N.W.2d 819 (Minn.1981) controls this issue. In *C.D.L.*, the supreme court held that prior juvenile adjudications were admissible for impeachment of juvenile witnesses in juvenile court hearings. *Id.* at 821. The court cited Minn. R. Evid. 609(d), which states that "[e]vidence of juvenile adjudications is not admissible * * * unless permitted by statute or required by the state or federal constitution." The court then cited Minn. Stat. § 260.211 (1980), which governed the effect of juvenile court proceedings at the time the case was decided.[1] The statute reads:

> No adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities imposed by conviction, nor shall any child be deemed a criminal by reason of this adjudication, nor shall this adjudication be deemed a conviction of crime. The disposition of the child or any evidence given by the child in juvenile court shall not be admissible as evidence against [the child] in any case or proceeding in any other court, except that an adjudication may later be used to determine a proper sentence, nor shall the disposition or evidence disqualify [the child] in any future civil service examination, appointment, or application.

*Id.* at 820–21 (citing Minn.Stat. § 260.211, subd. 1). The statute further reads:

> Nothing contained in this section shall be construed to relate to subsequent proceedings in juvenile court, nor shall preclude the juvenile court, under circumstances other than those specifically prohibited in subdivision 1, from disclosing information to qualified persons if the court considers such disclosure to be

---

1. Minn.Stat. § 260.211 has since been renumbered to Minn.Stat. § 260B.245 (2000), but the pertinent language remains the same.

in the best interests of the child or of the administration of justice.

*Id.* at 821 (citing Minn.Stat. § 260.211, subd. 2).

The supreme court concluded that the statute contained wording that justified its holding. *Id.* at 821. The court further reasoned that "the adjudication still [retained] its *confidentiality,* since juvenile proceedings are closed to the public." *Id.* at 821 (emphasis added). The court did not indicate what statutory language it was relying on to make its determination, but this court has since reasoned that the supreme court based its decision on the "statutory exception" under Minn.Stat. § 260.211, subd. 2. *See State v. Tennin,* 437 N.W.2d 82, 87 (Minn.App.1989) (stating *C.D.L.'s* holding that prior juvenile adjudication may be used for impeachment in juvenile adjudication proceedings was based on Minn.Stat. § 260.211, subd. 2), *review denied* (Minn. Apr. 24, 1989).

Appellant argues that *C.D.L.* has been superceded by the Minnesota Rules of Juvenile Procedure, which appellant correctly points out were adopted after *C.D.L.* was decided. To make this argument, appellant relies on Minn. R. Juv. P. 13.04, which states that "only such evidence as would be admissible in a criminal trial" shall be admitted in a juvenile adjudication hearing. Based on this rule, appellant contends that the Minnesota Rules of Evidence govern whether prior juvenile adjudications can be used for impeachment. Specifically, appellant claims that only criminal convictions can be used for impeachment. *See* Minn. R. Evid. 609(a) (stating credibility may be attacked by impeachment with evidence that witness has been convicted of a crime). Appellant asserts that, because adjudications are not considered convictions, his prior adjudication could not be used for impeachment. *See* Minn.Stat. § 260B.245, subd. 1 (2000)

(stating juvenile adjudication is not "deemed to be a conviction of a crime").

Appellant further correctly argues that the confidentiality of juvenile procedures as a basis for allowing impeachment by a prior juvenile adjudication is not applicable to his case. Unlike the juvenile hearing in *C.D.L.,* juvenile hearings are *now open to the public* if the juvenile is alleged to have committed a felony level offense and if the juvenile is at least 16 years old. Minn. Stat. § 260B.163, subd. 1 (2000). Here, the state alleged that appellant committed felony theft, and at the time, he was 16 years old; thus, as both parties concede, appellant's hearing was open to the public. Accordingly, the protection of confidentiality discussed in *C.D.L.* was not available to appellant.

All together, we find appellant's argument that impeachment by a juvenile delinquency adjudication should be inadmissible more persuasive than the state's argument. However, we do not rest our decision on this issue.

**B. Improper Use**

■ Appellant argues that the district court used his prior adjudication for an improper purpose by considering it as evidence of appellant's propensity to commit the charged act. We agree. The district court found that

> [Appellant] has a prior felony conviction. This *coupled with* his incredible testimony at trial convinces the Court that [appellant] stole the funds in question and did so even after being interrupted in attempting to break into the concession stand when [Michela] first arrived.

(Emphasis added.) The state contends that the district court only used appellant's prior adjudication for impeachment purposes. We disagree with the state.

■ We conclude that the court used appellant's prior adjudication as substantive evidence to support appellant's delinquency adjudication, and that constitutes clear error. We take the record as the record. The district court adjudged appellant as delinquent specifically because of appellant's prior adjudication *"coupled with"* appellant's version of the events. In essence, the district court ruled that, because appellant had a prior adjudication and because the court found his version of the events incredible, appellant was delinquent. As in adult criminal trials, the state must prove each essential element of a juvenile delinquency petition beyond a reasonable doubt. *See In re S.W.T.'s Welfare,* 277 N.W.2d 507, 514 (Minn.1979) (recognizing evidence in delinquency adjudication must establish truth of petition beyond reasonable doubt). Here, in addition to using the prior adjudication as substantive evidence, it seems as if the district court said, "Appellant had a prior criminal record and, therefore, the burden of proof is on him to show that he did not commit felony theft." This is an impermissible shift of the burden of proof.

■ Even assuming arguendo that the prior adjudication for juvenile delinquency was admissible, it would then only be admissible to impeach the credibility of appellant's testimony. The mere fact that appellant has a prior felony conviction cannot, standing alone or coupled with other testimony, be the substantive evidence that convinces the court at a bench trial that the appellant committed the charged crime. *See State v. Brouillette,* 286 N.W.2d 702, 708 (Minn.1979) (discussing cautionary jury instruction that directs jury to consider defendant's prior conviction *only* as it relates to defendant's credibility). The standard jury instruction for proper use of a defendant's prior conviction states:

The evidence concerning a prior conviction of [the defendant] is admitted *only* for your consideration in deciding whether [the defendant] is telling the truth in this case. You must not consider this conviction as evidence of the defendant's character or conduct except as you may think it reflects on believability.

10 *Minnesota Practice,* CRIMJIG 2.02 (1999) (emphasis added).

## II.  Sufficiency of Evidence

■ In determining whether the evidence was legally sufficient, this court evaluates the record, and the legitimate inferences from the record, in the light most favorable to the adjudication. *In re Welfare of S.A.M.,* 570 N.W.2d 162, 167 (Minn.App.1997). The evidence must be sufficient, given the presumption of innocence, to permit the fact-finder to reach a guilty verdict, and it must be assumed that the fact-finder disbelieved the defense witnesses and believed those of the state. *Dale v. State,* 535 N.W.2d 619, 623 (Minn. 1995); *see also In re Welfare of L.B.,* 404 N.W.2d 341, 345 (Minn.App.1987) (applying same standard in juvenile matters). Further, the fact-finder determines witness credibility and weighs the evidence. *In re S.A.M.,* 570 N.W.2d at 167. But, when the evidence is circumstantial, a reviewing court must determine whether the reasonable inferences legitimately drawn from the circumstantial evidence are inconsistent with any rational hypothesis except guilt. *State v. Scharmer,* 501 N.W.2d 620, 622 (Minn.1993).

Appellant argues that the circumstantial evidence presented at trial was insufficient to sustain his conviction because no one saw him take the money and because there were rational alternative hypotheses to support appellant's innocence. Appellant suggests that someone else could have en-

tered the building and taken the money without being seen. Appellant also suggests that Michela could have lost some of the money. Appellant asserts that both suggestions are rational alternative hypotheses that support his innocence.

Because we have decided this case on another issue, we do not reach the merits of sufficiency of the evidence. We do note that the state's evidence against appellant is less than compelling. Various people had access to the money, there were no eyewitnesses claiming to have seen appellant (or anyone else) take the money, appellant did not confess, none of his fingerprints were recovered, and there is nothing in the record to show that a search of appellant or his premises yielded any evidence pointing to him, such as a bundle of extra cash. Even though the district court found appellant's explanation "hard to believe," a defendant never has to "prove his innocence." As stated previously, the burden is always on the state to prove all elements of a crime by proof beyond a reasonable doubt.

## DECISION

The district court committed clear error by considering appellant's prior juvenile adjudication as substantive evidence to support his delinquency adjudication. We reverse and remand for a new trial.

**Reversed and remanded.**