*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0590**

In the Matter of the Welfare of:
J. C. A., Jr., Child

**Filed October 14, 2014
Affirmed
Chutich, Judge**

Beltrami County District Court
File No. 04-JV-13-3642

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Timothy R. Faver, Beltrami County Attorney, Katie S. Nolting, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

## UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant J.C.A. Jr. challenges the district court's adjudication of delinquency for one count of second-degree criminal sexual conduct, arguing that the evidence is insufficient to support the determination that he committed the offense. Because we

conclude that the evidence is sufficient to sustain appellant's delinquency adjudication, we affirm.

## FACTS

Eleven-year-old eyewitness, J.P., and the three-year-old victim, M.L., were placed in the same foster home in 2013. Appellant lived in the foster home with his biological mother and his stepfather. On a night between June 27, 2013, and October 16, 2013, J.P. heard M.L. crying from an upstairs bedroom in the foster home. J.P. entered the upstairs bedroom and observed appellant, who was thirteen at the time, kneeling over M.L. Appellant's pants and underwear were around his legs. J.P. observed appellant place his penis in and around M.L.'s mouth. J.P. then ran to the bathroom and vomited.

On October 16, 2013, before a family law hearing unrelated to this case, J.P. informed Chief Judge Day of the Leech Lake Band of Ojibwa of the sexual assault he witnessed. J.P. told Chief Judge Day that he heard M.L. crying, went upstairs to check on her, and witnessed appellant with his penis in and around M.L.'s mouth. After seeing this contact, J.P. said he went to the bathroom and vomited. Chief Judge Day reported J.P.'s disclosure to Leech Lake Child Welfare.

On October 30, 2013, J.P. met with Jennifer Fraik, a family nurse practitioner with specialized training in forensic interviewing and examining children who have experienced sexual abuse, at the Family Advocacy Center. During a video- and audio-recorded CornerHouse interview, Fraik questioned J.P. about the sexual conduct. J.P. explained what he witnessed; this statement was consistent with what he previously disclosed to Chief Judge Day.

2

The state charged appellant with second-degree criminal sexual conduct. *See* Minn. Stat. § 609.343, subd. 1(a) (2012) (defining second-degree criminal sexual conduct as sexual contact with a child under the age of 13 by a person more than 36 months older). At the ensuing court trial, J.P. initially displayed difficulty testifying about the sexual assault, stating that he was not sure if what he witnessed was a dream or not. After a brief break from testifying, J.P. described appellant's conduct consistent with his previous disclosures to Chief Judge Day and Fraik. Following J.P.'s testimony, both Chief Judge Day and Fraik testified about what J.P. told them about the sexual conduct, and a video of the CornerHouse interview was played for the court.

The district court found appellant guilty as charged. After adjudicating appellant delinquent for second-degree criminal sexual conduct, the district court placed him on supervised probation and ordered him to complete long-term residential treatment. This appeal followed.

## D E C I S I O N

Appellant argues that the evidence is insufficient to sustain his delinquency adjudication for second-degree criminal sexual conduct. We disagree.

In a juvenile delinquency proceeding, the state must prove beyond a reasonable doubt each element of the offense charged. *In re Welfare of G.L.M.*, 347 N.W.2d 84, 85 (Minn. App. 1984). On appeal, we view the evidence in the light most favorable to the conviction. *In re Welfare of S.A.M.*, 570 N.W.2d 162, 167 (Minn. App. 1997). The sufficiency of the evidence supporting an adjudication of delinquency is assessed by determining whether the factual record and the legitimate inferences drawn from it

reasonably support the factfinder's conclusion that the appellant committed the charged offense. *In re Welfare of J.R.M.*, 653 N.W.2d 207, 210 (Minn. App. 2002). When reviewing the sufficiency of the evidence, we apply the same standard to bench and jury trials. *In re Welfare of M.E.M.*, 674 N.W.2d 208, 215 (Minn. App. 2004).

To establish appellant's guilt of second-degree criminal sexual conduct, the state was required to prove that (1) appellant engaged in sexual contact with M.L.; (2) that M.L. was under 13 years of age; and (3) that appellant was more than 36 months older than M.L. *See* Minn. Stat. § 609.343, subd. 1(a). Appellant focuses his argument on the first element and does not dispute that the age requirements in the second and third elements are satisfied. Appellant challenges the sufficiency of the evidence to sustain his juvenile delinquency adjudication for second-degree criminal sexual conduct, arguing that the sole eyewitness to the offense, J.P., was not credible and no corroborating evidence exists.

To support his lack-of-corroboration argument, appellant relies partly on *State v. Johnson*, 679 N.W.2d 378 (Minn. App. 2004), *review denied* (Minn. Aug. 17, 2004). *Johnson* was a criminal sexual conduct case in which we acknowledged that "'[t]he absence of corroboration in an individual case . . . may well call for a holding that there is insufficient evidence upon which a jury could find the defendant guilty beyond a reasonable doubt.'" *Id.* at 387 (quoting *State v. Ani*, 257 N.W.2d 699, 700 (Minn. 1977)). In *Johnson*, the appellant contended that the inconsistencies in and lack of corroboration of the victim's testimony, the victim's recantation of the sexual assault, and the victim's own conduct made the evidence insufficient to support his conviction. *Id.* We ultimately

4

disagreed with the appellant's contentions, finding that inconsistencies and credibility determinations were for a factfinder to assess, and that the evidence presented at trial was sufficient to support the jury's verdict. *Id.*

Similarly, we disagree with appellant's contentions here. First, J.P.'s testimony, standing alone, is enough to support the adjudication. It is well established that "a conviction may be based on a single person's testimony." *State v. Cao*, 788 N.W.2d 710, 717 (Minn. 2010); *see also State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) ("We have stated that a conviction can rest on the uncorroborated testimony of a single credible witness." (quotation omitted)).

Second, a review of the record demonstrates that J.P.'s testimony was corroborated in several ways. In total, the state called four witnesses: J.P., Chief Judge Day, Fraik, and Bill Thompson, the investigating officer. While J.P. was the only testifying eyewitness, the testimony of Chief Judge Day and Fraik was consistent with J.P.'s recitation of what he saw. Moreover, during her trial testimony, Fraik explained that she was trained to assess important details and signs to determine whether a child had experienced a specific situation or whether a child was being truthful or untruthful. Fraik testified about the signs and details that she observed when interviewing J.P. that supported his account of the sexual conduct. The CornerHouse interview was video- and audio-recorded, and a video of Fraik's interview of J.P. was shown to the court. Upon this record, sufficient evidence was presented to support appellant's adjudication.

Appellant contends that J.P.'s trial testimony was inconsistent with his prior accounts of the sexual assault and is thus not credible. Specifically, appellant argues that

5

J.P. testified that he was not sure whether he had dreamed the sexual assault or actually witnessed it, contrary to J.P.'s prior statements to Fraik and Chief Judge Day that he had actually witnessed the sexual conduct. He also asserts that J.P. made other statements to Fraik that J.P. denied during his trial testimony. These statements involved M.L.'s two-year-old sister trying to defend M.L. from the sexual assault and the foster mother dismissing J.P.'s attempt to report the conduct. Appellant further contends that J.P.'s assertion, during the CornerHouse interview, that appellant routinely physically abused M.L. was uncorroborated.

The district court judge, who had the opportunity to observe all of the witnesses as they testified, heard this evidence concerning inconsistencies but found J.P.'s account of the sexual conduct to be believable. The district court heard J.P. explain at trial that he remembered waking up, hearing M.L. crying, walking up the stairs, and seeing appellant putting his penis in and near M.L.'s mouth. The district court specifically found the testimony of the state's four witnesses, including that of J.P., to be credible, while alternatively finding the defense witnesses' trial testimony to be inconsistent and not credible.

The credibility and weight given to the testimony of each witness are issues for the factfinder. *S.A.M.*, 570 N.W.2d at 167. We "must assume that the fact-finder believed the state's witnesses and disbelieved any contrary evidence." *In re Welfare of T.N.Y.*, 632 N.W.2d 765, 768 (Minn. App. 2001). Accordingly, we will defer to the district court's determination that J.P. was credible. Upon this record, the evidence is sufficient

to sustain appellant's delinquency adjudication for second-degree criminal sexual conduct.

**Affirmed.**