*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1646**

State of Minnesota,
Respondent,

vs.

Jean Clarice Clement,
Appellant.

**Filed July 20, 2015
Affirmed
Kirk, Judge**

Koochiching County District Court
File No. 36-CR-14-348

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Steven M. Shermoen, International Falls City Attorney, International Falls, Minnesota
(for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie M. Willett, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Connolly, Judge; and Chutich,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant challenges her misdemeanor theft conviction, arguing that the district

court erred by admitting a copy of a surveillance video that violated the best-evidence

rule and was not properly authenticated, and by allowing officer opinion testimony about the contents of the video. Because the district court did not abuse its discretion in admitting the video or commit plain error in admitting the officer's testimony, we affirm.

**FACTS**

On the evening of May 1, 2014, the manager at the Verizon Wireless retailer in International Falls, Minnesota, determined that a purple phone charger was missing from the store. He suspected that appellant Jean Clement had stolen the charger, as it had been present that morning, she had spent several minutes in its area that afternoon, and he did not recall any other customers spending time in its area that day. He notified the corporate office and law enforcement of the suspected theft.

After a delay in receiving video-surveillance evidence from the corporate office, the manager personally downloaded the video directly from the system and delivered it on a flash drive to law enforcement. Law enforcement made a copy onto a DVD. At trial, appellant's counsel objected to the video's introduction on the basis that it was "not the best evidence." The district court allowed the state to play law enforcement's copy of the video for the jury. A police officer later testified regarding the contents of the video.

The jury found appellant guilty of theft, as charged. This appeal follows.

**D E C I S I O N**

I. **In admitting the surveillance video, the district court did not abuse its discretion because the video complied with the best-evidence rule and was properly authenticated.**

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the

2

burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). If the district court erroneously admitted evidence, the reviewing court determines "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Post*, 512 N.W.2d 99, 102 n.2 (Minn. 1994). If there is a reasonable possibility that the verdict might have been more favorable to the defendant without the evidence, then the error is prejudicial. *Id.*

## A. The Best-Evidence Rule

Appellant argues that the best-evidence rule required the state to present "the video from the [recording] device directly, or an official copy made by the corporate office."

Under the best-evidence rule, an "original writing, recording, or photograph is required" to prove its contents. Minn. R. Evid. 1002; *see State v. Carney*, 649 N.W.2d 455, 463 (Minn. 2002). A video or motion picture is considered a "photograph" for purposes of the rule. Minn. R. Evid. 1001(2). "If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'" Minn. R. Evid. 1001(3). The best-evidence rule "simply prohibits the introduction of secondary evidence to establish the contents of a writing where the writing itself is available." *State v. DeGidio*, 277 Minn. 218, 220, 152 N.W.2d 179, 180 (1967); *see Carney*, 649 N.W.2d at 463 (holding that the district court did not abuse its discretion in excluding testimony concerning contents of a videotape that was not shown in court, applying the best-evidence rule).

However, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Minn. R. Evid. 1003. "A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic rerecording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original." Minn. R. Evid. 1001(4). "Re-recordings of audio tapes or videotapes should be accepted as duplicates when shown to have been made by a technique designed to ensure accurate reproduction of the original." *State v. Brown*, 739 N.W.2d 716, 722 (Minn. 2007) (quotation omitted).

Appellant argues that the manager lacked authorization to "cut and copy" the video, and that the manager's copy is unreliable because he "is not a video expert and does not copy such videos on a regular basis." Further, she contends, an employee at the corporate headquarters would not have known to focus on appellant and "would likely have copied the video from the entire day." These arguments are unavailing.

The manager testified that he received permission from his district manager to retrieve the data directly from the recording device. He described the location of the video cameras, and knew "the length of time in question" to download because he was present in the store that day. The manager copied a continuous period of approximately 15 minutes when appellant was in the store, denied altering the video in any way or knowing how to do so, immediately brought the flash drive to law enforcement, and

4

confirmed that what he viewed on the monitor in the store was consistent with the video played in court.

Although there is no evidence that the manager and the police officer are "video experts," there also is no indication that they do not retrieve or copy videos on a regular basis, nor legal authority requiring a video expert to perform these straightforward tasks. With more than two years of experience managing a store selling electronics, it would be reasonable to conclude that the manager was familiar with recording equipment, particularly that used in the store, and could thus competently download the video. Likewise, it would be reasonable to conclude that the experienced officer was capable of competently copying data from a flash drive onto law-enforcement computer equipment without making any inadvertent alterations. Further, the chain of custody is quite clear, as the manager delivered the flash drive directly to law enforcement, which made the copy admitted at trial.

The choice to retrieve only the portion of the video showing appellant does not raise an issue as to the reliability of the video shown under the best-evidence rule, but rather goes to the weight of the evidence. *See Buffalo Ins. Co. v. United Parking Stations, Inc.*, 277 Minn. 134, 139, 152 N.W.2d 81, 84 (1967) ("The best-evidence rule goes only to the competency of evidence, not to its relevancy, materiality, or weight . . . ."). When only part of the video was offered, appellant could have invoked Minn. R. Evid. 106 to "require the introduction . . . of any other part . . . which ought in fairness to be considered contemporaneously with it." Instead, in closing argument,

defense counsel twice alluded to other customers in the store as potential alternative perpetrators.

Appellant does not argue, and there is no reason to find, that there is a genuine question as to the authenticity of what she describes as the "original" video from the corporate office, nor the data on the recording device at the store. *See* Minn. R. Evid. 1003. Because the data were stored in a computer or similar device and the video downloaded onto the manager's flash drive was shown to reflect the data accurately, the manager's video constitutes an "original" under Minn. R. Evid. 1001(3). For the reasons stated above, it was not unfair to admit law enforcement's duplicate in lieu of an original video at trial. *See* Minn. R. Evid. 1003. Therefore, the district court did not abuse its discretion in concluding that the video met the requirements of the best-evidence rule.

**B.      Authentication of the Video**

Appellant also argues that the district court erred by admitting the video because it was not properly authenticated.

"The [district] court has considerable discretion under Minn. R. Evid. 901(a) in deciding whether evidence has been adequately authenticated or identified . . . ." *State v. Dulak*, 348 N.W.2d 342, 344 (Minn. 1984). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Minn. R. Evid. 901(a). Minn. R. Evid. 901(b) provides examples of authentication methods "[b]y way of illustration only, and not by way of limitation."

Two methods for authenticating a video are the pictorial-witness theory and the silent-witness theory. *In re Welfare of S.A.M.*, 570 N.W.2d 162, 164-65 (Minn. App. 1997); *see* Minn. R. Evid. 901(b)(1), (9). Under the pictorial-witness theory, a video is authenticated by a witness who observed the events depicted on the video. *S.A.M.*, 570 N.W.2d at 164. Under the silent-witness theory, a proponent offers evidence of the reliability of the process by which the video was made. *Id.* at 165.

*S.A.M.* involved the admissibility of a surveillance video from a bus. *Id.* at 163. The state offered the testimony of a video technician, who explained how the video was made, stated that the video produced an accurate result, and provided some evidence on the chain of custody. *Id.* at 166. The bus driver "partially authenticated" the video by testifying "that a large portion of it . . . was a fair and accurate representation of what he had witnessed" that day, and there was additional evidence on chain of custody from a police sergeant. *Id.* This court concluded that "[t]he videotape was properly admitted because it was authenticated according to a method listed in 901(b) and consistent with the broad guideline for authentication set out in [r]ule 901(a): that is, evidence was produced showing that the tape is what its proponent claimed." *Id.* at 166-67.

Here, the manager, the person who retrieved and redacted the video from the surveillance system, testified at trial and thoroughly described the process. The manager explained that he copied only the portion of the video showing appellant because he had been present at the store all day and no one else had spent so much time in the area of the missing phone charger. He also confirmed that the video delivered to law enforcement, and the copy played at trial, were consistent with what he viewed on the monitor

7

connected to the recording device. Further, the police officer testified as to the process of copying the data from the manager's flash drive onto the DVD that was played at trial and confirmed that the video he received from the manager was consistent with the DVD. This testimony provides significant silent-witness testimony about the reliability of the process that created the DVD. In addition, as in *S.A.M.*, the video was "partially authenticated" by the manager's testimony that he selected the portion of the recording that represented his recollection of the time period that appellant was in the store that day, during which the behavior arousing his suspicions occurred. *See* 570 N.W.2d at 166. Therefore, the district court did not abuse its discretion in finding that the DVD was what the state claimed and in admitting it into evidence. *See* Minn. R. Evid. 901(a).

**II.     The district court did not plainly err in permitting the officer's opinion testimony that the video showed appellant concealing store merchandise.**

Appellant argues that the district court erred in allowing the police officer's opinion testimony about her behavior on the surveillance video, either as a lay or expert witness. The officer testified that he observed appellant concealing merchandise on the video. He later testified that he observed nothing indicating that any other patron in the video should be considered a suspect, and that nothing in his viewing of the video at trial altered his decision that appellant should be prosecuted for theft of the phone charger. Appellant did not object to this testimony at trial.

Where an appellant fails to make an evidentiary objection on specific grounds at trial, the objection is generally not preserved for appeal. *State v. Brown*, 792 N.W.2d 815, 820 (Minn. 2011) (citing Minn. R. Evid. 103(a)(1)); *see State v. Abraham*, 338

8

N.W.2d 264, 266 (Minn. 1983) (deciding not to address an issue on appeal in part because defense counsel did not state precisely his objection on the record). But an appellate court has discretion to consider the issue for plain error, which requires an appellant to demonstrate that (1) there was an "error"; (2) the error was "plain"; and (3) the error affected substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998); *see* Minn. R. Crim. P. 31.02 (providing that "[p]lain error affecting a substantial right can be considered" even if the error was not brought to the district court's attention).

An error is plain if it is clear or obvious under current law, *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002), and an error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct," *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error affects substantial rights where there is a "reasonable likelihood" that the absence of the error would have had a "significant effect" on the jury's verdict. *State v. MacLennan*, 702 N.W.2d 219, 236 (Minn. 2005) (quotation omitted). If the first three requirements of the plain-error test are satisfied, we then consider the fourth requirement, whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted).

Minn. R. Evid. 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinion or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Under this rule, "the emphasis is not on how a witness expresses himself or herself—[i.e.], whether in the form of an opinion or a conclusion—but on whether the witness personally knows what he or she is talking about and whether the testimony will be helpful to the jury." *Post*, 512 N.W.2d at 101. Further, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Minn. R. Evid. 704; *see Post*, 512 N.W.2d at 101-02, 104 (holding that the district court erred in excluding testimony that the victim was the aggressor in a prosecution for attempted murder and assault). For example, in *State v. Washington*, where a 911 call recording was admitted, we held that the 911 operator's testimony that she believed the caller was being assaulted was admissible lay opinion testimony under rule 701. 725 N.W.2d 125, 137 (Minn. App. 2006), *review denied* (Minn. Mar. 20, 2007).

Appellant argues that the officer's testimony did not assist the jury in understanding the video and was prejudicial. Courts should be cautious about the influence of a law enforcement officer's opinion on ultimate issues. *See State v. Hogetvedt*, 623 N.W.2d 909, 915 (Minn. App. 2001) (stating that, "[g]iven [the officer]'s status as a police officer," his opinion as to guilt "may have unduly influenced the jury"), *review denied* (Minn. May 29, 2001). However, the officer's testimony here was rationally based on his perception of the video, and was helpful to the jury's clear understanding of his testimony regarding the investigation and the decision to charge appellant. *See Griller*, 583 N.W.2d at 743 (holding that the district court did not abuse its discretion in admitting evidence of events that triggered an investigation and excavation

10

as "context for an investigation"); *State v. Czech*, 343 N.W.2d 854, 856-57 (Minn. 1984) (upholding admission of the defendant's taped statement in which he implicated himself in other crimes, concluding that the whole tape was necessary to give the jury the proper context for the defendant's statement and to reveal to the jury why the police were conducting an undercover investigation). Notably, appellant's counsel not only failed to object to the testimony, but also elicited further testimony about the contents of the video on cross-examination of the officer. Consequently, the district court did not plainly err in allowing the testimony.

Even if the district court plainly erred by admitting the challenged testimony, appellant's argument nonetheless would fail because she cannot demonstrate that any error affected her substantial rights. The jury viewed the video multiple times and was able to reach its own conclusions about the video's contents. *See State v. Breeden*, 374 N.W.2d 560, 561-62 (Minn. App. 1985) (stating that the district court erred in suppressing a video of a defendant who claimed to have a balance problem performing sobriety tests on the ground that the video was unfairly prejudicial because "the jury is capable of viewing the real evidence of intoxication together with any proof of a balance problem and reaching their own conclusion as to the facts"). Therefore, the testimony did not affect the verdict. *See Strommen*, 648 N.W.2d at 688.

Because we conclude that the officer's testimony regarding the video was admissible lay opinion testimony, we do not reach appellant's argument that it was inadmissible as expert opinion testimony.

**Affirmed.**

11